# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| WILLIAM A.,[1] | ) |
| Plaintiff, | ) ) ) |
| | ) CIVIL ACTION |
| v. | ) |
| | ) No. 20-1165-JWL |
| KILOLO KIJAKAZI,[2] | ) |
| Acting Commissioner of Social Security, | ) ) |
| Defendant. | ) ) |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Disability Insurance Benefits (DIB) pursuant to sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ) evaluation of the evidence and medical opinions or in his residual functional capacity (RFC) assessment, the court ORDERS that

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

[2] On July 9, 2021, Kilolo Kijakazi was appointed as Acting Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Mr. Kijakazi is substituted for Commissioner Andrew M. Saul as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

## I. Background

Plaintiff protectively filed an application for DIB on October 16, 2017. (R. 12, 226). After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Plaintiff claims "[t]he ALJ's RFC for light work, specifically standing and walking for six hours in the workday, is not supported by substantial evidence." (Pl. Br. 9) (underline omitted).

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). "Substantial evidence" refers to the weight, not the amount, of the evidence. It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the

evidence not only supports [a contrary] conclusion, but compels it." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals

the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's RFC. 20 C.F.R. § 404.1520(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, he is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999). The court addresses the error alleged in Plaintiff's Social Security Brief, but first addresses the issue of whether it should consider certain evidence presented for the first time to the Appeals Council, and if so, what evidence it should consider.

## II. Evidence Submitted to the Appeals Council

Plaintiff argues that he submitted records to the Appeals Council which render the ALJ's "assessment of the State [sic] agency consultants' opinions and the light RFC unsupported." (Pl. Br. 11). He acknowledges that the Council found some of the evidence not chronologically relevant but argues "this evidence was new and material as

it pertained to the same reported symptoms and impairments as prior to the unfavorable decision [and] provided additional support for Dr. Cranston's opinion and [Plaintiff]'s allegations of limitations." (Pl. Br. 12). Plaintiff also argues, "the Appeals Council erred in finding the evidence did not change the outcome of this case because the additional evidence left the ALJ's decision unsupported by substantial evidence." Id. at 13. In response, the Commissioner argues that "the Appeals Council did not err in its finding that this evidence was either not time relevant or would not provide a basis for changing the ALJ's decision that Plaintiff could perform the limited demands of light work through May 2019." (Comm'r Br. 9). In reply, Plaintiff argues, "because the Appeals Council failed to provide any further analysis of this additional evidence, it is unclear why this evidence would not have altered the ALJ's decision and remand is appropriate for the ALJ to make that determination." (Reply 3) (citing Padilla v. Colvin, 525 F. App'x. 710, 712 (10th Cir. 2013)).

    As the parties agree, Plaintiff submitted additional evidence to the Appeals Council and the Council determined that some of the evidence was not related to the period at issue (before the ALJ issued his decision on May 23, 2019) and that some of the evidence "does not show a reasonable probability that it would change the outcome of the decision." (R. 2). Moreover, the Council segregated the evidence into two groups, noting the "medical records from Freeman Health System, dated March 27, 2019 through May 20, 2019 (13 pages)" and the "medical records from Ascension Via Christi Hospital Pittsburg, Inc., dated April 19, 2019 (1 page)" was the evidence which "does not show a reasonable probability that it would change the outcome of the decision." (R. 2)

5

(evidence entered in the record at R. 129-42). It also noted "medical records from Ascension Via Christi Hospital Pittsburg, Inc., dated May 31, 2019 through October 3, 2019 (10 pages); medical records from Freeman Health System, dated May 31, 2019 through November 4, 2019 (53 pages); medical records from Orthopaedic Specialists of Four States, dated July 5, 2019 (3 pages); [and] medical records from Freeman Midwest Internal Medicine, dated June 5, 2019 through November 4, 2019 (29 pages)" was the evidence which "does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before May 23, 2019." (R. 2) (evidence entered in the record at R. 8-95, 101-05). The parties' arguments tend to conflate the two groups of evidence, but the Appeals Council addressed them separately as two groups and the court will do the same.

The Social Security regulations in effect when the ALJ made the decision in this case explain:

> (a)  The Appeals Council will review a case … if—
>
> ***
>
> > (5) … the Appeals Council receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision.

20 C.F.R. § 404.970 (2019).

The Tenth Circuit has interpreted the regulations, and decided that when the Appeals Council accepts new, material, and chronologically relevant evidence, that evidence becomes a part of the administrative record which must be considered by a

court when reviewing the final decision. O'Dell v. Shalala, 44 F.3d 855, 858-59 (10th Cir. 1994). "Whether [evidence] qualifies as new, material and chronologically relevant is a question of law subject to [the court's] de novo review. Chambers v. Barnhart, 389 F.3d 1139, 1142 (10th Cir. 2004). If the evidence does not qualify, the court will not consider it in its judicial review. Id. "Finally, if the evidence qualifies but the Appeals Council did not consider it, the case should be remanded for further proceedings." Id. Shortly after deciding Chambers, the Tenth Circuit explained that when the Appeals Council does not specify whether the evidence submitted to it qualifies as new, material, and chronologically relevant evidence, but makes the evidence at issue a part of the administrative record, the court will interpret that action "as an implicit determination" that the evidence is "qualifying new evidence," and will consider it in its substantial evidence review of the Commissioner's decision. Martinez v. Barnhart, 444 F.3d 1201, 1207 (10th Cir. 2006).³

The Council stated it did not exhibit the evidence which it found would not change the outcome of the decision. (R. 2). What this means is that, although the evidence is contained within the miscellaneous documents in the early portion of the record (the Appeals Council decision, evidence presented to the Appeals Council but not made a part of the record, correspondence with the Appeals Council, the Hearing Decision, and the Transcript of the Oral Hearing), the evidence was not made a part of the formal

---

³ Plaintiff cites to Martinez in his brief as 164 F. App'x. 725, 732. (Pl. Br. 12). The court notes the Tenth Circuit ordered Martinez to be published on April 25, 2006. The opinion cited in Plaintiff's Brief is the same opinion, as published by order of the Tenth Circuit, and cited by the court above.

7

administrative record. This understanding is confirmed by the fact Plaintiff submitted evidence to the Appeals Council to which the Council assigned exhibit numbers and made a part of the administrative record, and which does not appear among the miscellaneous documents early in the record. (R. 6) ("Order of Appeals Council, noting "additional evidence" received "which it is making part of the record," consisting of Exhibit 15B, and Exhibit 22E).

With regard to this evidence, the real question for the court is whether there is a reasonable probability it would change the outcome of the decision (whether it is material). The medical record from Ascension Via Christi Hospital Pittsburg, Inc., dated April 19, 2019 is the report of an ultrasound of Plaintiff's thyroid. (R. 142). The report indicates Plaintiff has hypothyroidism and states the impression, "Thyroid heterogeneity with subcentimeter left lobe nodule. No dominant thyroid mass is detected." Id. The ALJ recognized Plaintiff was diagnosed with hypothyroidism and noted that "laboratory testing shows that his condition is well compensated with use of Levothyroxine." (R. 113). He noted that his record review revealed no functional limitations resulting from hypothyroidism, id., and laboratory testing revealed normal thyroid function. (R. 117). The record evidence supports the ALJ's findings and the report of the thyroid ultrasound gives no new information and has no reasonable probability of changing his decision.

The same result obtains when considering the medical records from Freeman Health System, dated March 27, 2019 through May 20, 2019. (R. 129-41). In his decision, the ALJ considered and discussed the evidence related to Plaintiff's neuropathy (R. 119), Lyme disease/Rocky Mountain Spotted Fever (RMSF) (R. 112, 115, 118, 119),

8

cardiovascular condition including a stress test (R. 112, 117-19), spine condition (R. 112-21, passim), and vocal cord dysfunction. (R. 113). Plaintiff points to no evidence in these records demonstrating disabling functional limitations resulting from these or any other impairments which were not specifically considered and discussed by the ALJ. As the Appeals Council found, Plaintiff has shown no reasonable probability these medical records would change the outcome of the ALJ's decision.

The Appeals Council found the medical records dated after May 23, 2019 do not relate to the period at issue and consequently do not affect the question of disability before May 23, 2019. (R. 8-95, 101-05). Plaintiff argues, "this evidence was new and material" because it relates "to the same reported symptoms and impairments" as the earlier record evidence and because it "provided additional support for Dr. Cranston's opinion and [for Plaintiff]'s allegations of limitations." (Pl. Brief 12). The evidence is clearly new in the sense it was not in existence at the time the ALJ considered the record and issued his decision. To the extent it relates to the same reported symptoms and impairments, however, it is merely cumulative and not material to the issues already decided by the ALJ. And, Plaintiff does not address the Appeals Council's finding that it is not chronologically relevant or cite to evidence in these new medical records which demonstrate disabling functional limitations before May 23, 2019. Moreover, in a cover letter with the records from Freeman Health System (R. 8-58), Plaintiff argues his "condition has greatly deteriorated since the ALJ's decision and he has been diagnosed with" a rare and debilitating disorder. (R. 9). The ALJ found Plaintiff not disabled within the meaning of the Act from September 17, 2016 through May 23, 2019, the date

9

of his decision. (R. 123-24). If his condition has deteriorated since that time and he is now disabled, he should do as the Appeals Council suggested and apply again. Hopefully he has done so. The court finds the Appeals Council correctly determined the additional evidence submitted is not new, material, and chronologically relevant to the ALJ's decision. Consequently, the court will not consider that evidence in its judicial review of the ALJ's decision.

### III. The ALJ's RFC Assessment for Light Work

Plaintiff quotes the definition of substantial evidence from Wall, 561 F.3d at 1052, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." (Pl. Br. 10). He then argues, "A reasonable mind would not accept the ALJ's conclusion that [Plaintiff] retains the ability to stand and walk for six hours in an eight-hour workday. Id. Plaintiff argues the ALJ erroneously relied on the state agency medical consultants' opinions because those opinions are not based on substantial evidence. Id. He argues this is so because the consultants' opinions are inconsistent with the opinions of Dr. Wilberding, who examined Plaintiff and Dr. Cranston who treated him. Id. He argues the "consultants' opinions are also inconsistent with the longitudinal record." Id. at 11. He argues "other evidence of record supports additional limitations," id. at 13, and the opinions of Dr. Wilberding and Dr. Cranston support "a greater limitation in standing and walking." Id. at 14. He acknowledges the ALJ considered the supportability and consistency of Dr. Wilberding's and Dr. Cranston's opinions, id. at 14-15 but argues "that substantial evidence of record does not support the ALJ's decision to

10

find [Dr Wilberding's] opinion unpersuasive and ultimately conclude that [Plaintiff] could perform full-time competitive employment at the light exertional level." Id. Similarly, he argues, "Despite finding Dr. Cranston's opinion based on a treating relationship, which included treatment for ongoing symptoms of Rocky Mountain Spotted Fever, the ALJ found the opinion unpersuasive. The ALJ's conclusion, however, is not supported by substantial evidence." (Pl. Br. 16). He argues the record evidence supports Dr. Wilberding's and Dr. Cranston's opinions. Id. at 16-17. He argues the ALJ erroneously relied on Plaintiff's activities because Plaintiff stated "that if he overdid it, he would be sore for days," he had assistance with household chores, took extra time to perform them, and "had to modify the way he hunted and fished, and he could not do the activities often." Id. at 18. He explains how, in his view, the ALJ should have weighed the supportability and consistency factors when evaluating the medical opinions, and concludes, "the record as a whole supports and is consistent with Dr. Cranston's opinion." Id. at 19-20.

The Commissioner argues the ALJ properly applied the new regulations for evaluating medical opinions and prior administrative medical findings and adequately explained that he found Dr. Wilberding's opinion less persuasive than the medical opinions of the state agency medical consultants and did not find Dr. Cranston's opinion persuasive. (Comm'r Br. 6-8). He argues that Plaintiff points to nothing in the records that demonstrates he is unable to stand and walk a total of 6 hours in an 8-hour workday. Id. at 9. In his Reply Brief, Plaintiff argues that the medical opinions previously discussed show greater limitations than assessed by the ALJ. (Reply 2). He argues his

11

fatigue "in combination with his other admittedly severe impairments" demonstrate he is unable to walk and stand a total of 6 hours in an 8-hour workday. Id.

As noted above, in order to demonstrate that the ALJ's finding of fact is erroneous, Plaintiff must point to record evidence that <u>compels</u> a contrary conclusion. <u>Elias-Zacarias</u>, 502 U.S. at 481, n.1. The mere fact that the evidence might also <u>support</u> a contrary finding will not establish error in the ALJ's determination. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." <u>Lax</u>, 489 F.3d at 1084 (citations, quotations, and bracket omitted); <u>see also</u>, <u>Consolo v. Fed. Maritime Comm'n</u>, 383 U.S. 607, 620 (1966).

The court's review begins with the decision of the ALJ, not what the plaintiff—or even the court—believes should have been the better, or best, decision. If the ALJ applied the correct legal standard and the record contains "such relevant evidence as a reasonable mind might accept as adequate to support [the ALJ's] conclusion,' <u>Richardson v. Perales</u>, 402 U.S. at 401, the court must affirm that decision.

Plaintiff's argument proceeds in two stages: First the ALJ should have found the opinions of Dr. Wilberding, who examined Plaintiff, and Dr. Cranston, who treated Plaintiff, more persuasive than the opinions of the state agency medical consultants, Dr.

Spence and Dr. Panek,[4] who merely reviewed the incomplete record before all of Dr. Cranston's medical records were submitted and before Dr. Cranston provided her medical opinion.  Second, the record evidence is in conflict with the finding Plaintiff can stand and walk 6 hours total in an 8-hour workday but supports Dr. Wilberding's and Dr. Cranston's opinions he has much greater limitations.

As Plaintiff acknowledges, the Commissioner propounded new regulations regarding the evaluation of medical opinions for claims filed, such as was the present claim, on or after March 27, 2017.  20 C.F.R. § 404.1520c (2019).  An ALJ is to evaluate medical opinions using five factors; supportability, consistency, relationship of source to claimant, specialization, and other factors tending to support or contradict a medical opinion or prior administrative medical finding.  20 C.F.R. § 404.1520c(a)(c)(1-5) (2019).  The most important factors are supportability and consistency, id., and the ALJ will articulate how persuasive he finds all medical opinions.  Id. § 404.1520c(b).

In adopting the new regulations and dropping the treating physician rule, the Commissioner provided two explanations germane to the issues here:

> To account for the changes in the way healthcare is currently delivered, we are adopting rules that focus more on the content of medical opinions and less on weighing treating relationships against each other. This approach is more consistent with current healthcare practice.

---

[4] The "opinions" of Dr. Spence and Dr. Panek are properly referred to as "prior administrative medical findings."  However, in cases such as this, medical opinions and prior administrative medical findings are considered and articulated in the same manner. 20 C.F.R. § 404.1520c (2019).  The court refers to them here as medical opinions.

Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844-01, 5,854, 2017 WL 168819 (SSA Jan. 18, 2017) (emphasis added). And,

> By moving away from assigning a specific weight to medical opinions, we are clarifying both how we use the terms "weigh" and "weight" in final 404.1520c(a), 404.1527, 416.920c(a), and 416.927 and also clarifying that adjudicators should focus on how persuasive they find medical opinions and prior administrative medical findings in final 404.1520c and 416.920c. Our intent in these rules is to make it clear that it is never appropriate under our rules to "credit-as-true" any medical opinion.

Id. at 5,858.

The ALJ applied the new regulations to evaluate the medical opinions in this case and the court must determine whether substantial evidence supports his persuasiveness findings. The ALJ found the functional limitations opined by the state agency medical consultants

> more consistent with the evidence than the opinion of Dr. Wilberding. Although Dr. Wilberding found that bilateral straight leg raising was positive, that is the only evidence of any lower extremity involvement. The claimant's gait has consistently been normal. There is no evidence of decreased strength and, despite his complaints of numbness and tingling in his feet, there is no evidence of loss of sensation.

(R. 121). Therefore, he found the medical consultants' opinions more persuasive than that of Dr. Wilberding. The evidence supports the ALJ's findings and Plaintiff does not point to evidence which compels finding greater limitations. He points to Plaintiff's testimony, to the positive straight leg raising found by Dr. Wilberding, to Dr. Cranston's opinion, and to Plaintiff's neuropathy. However, all of that evidence was considered and explained by the ALJ. The court will discuss his consideration of Dr. Cranston's opinion shortly, but as quoted above the ALJ noted Dr. Wilberding's examination was the only

one revealing positive straight leg raising bilaterally, Plaintiff's gait has been consistently normal, and although he has neuropathy, the evidence does not reveal a loss of sensation. Plaintiff has not shown that this is not the type of evidence a reasonable mind might accept as adequate to support a conclusion—it is.

Regarding Dr. Cranston's opinion, the ALJ recognized she was Plaintiff's treating physician, but he found her opinion not persuasive because "it appeared to be based largely on the claimant's subjective complaints." (R. 121). There is support for this finding in Dr. Cranston's opinion. (R. 640). The form which she completed with her opinion asked for "the principal clinical/laboratory findings and symptoms/allegations supporting" her opined limitations for "Lift/Carry, Stand/Walk, Sit, Push/Pull, Climb, Balance, Stoop, Kneel, Crouch, Crawl." Id. (underline in original). Dr. Cranston answered the query, stating, "Chronic pain of Back & Neck Which limits [Plaintiff's] ability to perform tasks including lifting/carrying, standing, walking, etc." Id. In other words, Dr. Cranston opined that the principal support for the walking and standing limitations she opined was Plaintiff's reported pain. While this is an appropriate basis for the physician's opinion, she provided no additional basis or clinical or laboratory findings. The ALJ went on the explain why he did not accept the opinion based principally on Plaintiff's subjective complaints:

> As discussed above, a single instance of positive straight leg raise testing and reduced range of motion of the lumbar spine at consultative physical examination is the only evidence of any lower extremity involvement. The claimant's gait has consistently been normal, and there is no evidence of decreased strength or sensory deficit. Moreover, the claimant has reported daily activities, which require activity far in excess of those detailed in this opinion such as hunting with a crossbow, training dogs for duck hunting,

15

fishing, mowing, and yardwork in addition to his household chores and
daily activities.

(R. 121). This is also the type of evidence a reasonable mind might accept as adequate to support a conclusion.

Plaintiff argues that although Plaintiff performed the activities noted, he testified that the activities were accommodated and not as he performed them before he allegedly became disabled. While it is true that Plaintiff suggested limitations in the activities he performed, the fact he was able to perform several of the activities at all suggests he is not so limited as Dr. Cranston opined, and is a basis to find her opinion not persuasive.

The ALJ explained his bases for finding the medical consultants' opinions persuasive and the other opinions less persuasive, and those bases are supported by the record evidence. Plaintiff has shown no error in the ALJ's decision.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated July 16, 2021, at Kansas City, Kansas.

                                                s:/ *John W. Lungstrum*
                                                **John W. Lungstrum**
                                                **United States District Judge**